IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JASPER MAURICE WARREN, #315498 | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RDB-09-1308 |
| KATHLEEN GREEN, WARDEN | * | |
| DEPARTMENT OF PUBLIC SAFETY & CORRECTIONAL SERVICES | * | |
| DAVID M. MATHIS | | |
| CORRECTIONAL MEDICAL SERVICES, INC. | * | |
| ROBERT SMITH | * | |
| Defendants. | | |
| | *** | |

## **MEMORANDUM OPINION**

Currently before this Court are the Motions to Dismiss or, in the Alternative, for Summary Judgment of Defendants Smith, Mathis, Correctional Medical Services, Inc., Green, and Department of Public Safety and Correctional Services. (Paper Nos. 17, 20 & 24). Plaintiff has filed Opposition responses and Defendants Smith and Green submitted Reply Memoranda. (Paper Nos. 30 & 36-38). In light of this Court's review of the medical records and declarations submitted by the parties, no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2009). For reasons to follow, Defendants' pleadings, construed as motions for summary judgment, shall be GRANTED.

PROCEDURAL HISTORY

This 42 U.S.C. § 1983 civil rights Complaint was received for filing on May 15, 2009. Plaintiff, who is confined at the Eastern Correctional Institution in Westover, Maryland, states that on February 1, 2007, he was seen by a Maryland Eastern Shore orthopedic surgeon, Dr.

Anthony Adrignolo, who reported that Plaintiff has a progressive deformity to his left foot and ankle, secondary to a severe burn Plaintiff sustained when he was six years old. Plaintiff claims that a radiograph diagnosed him with a "talonavicular dislocation with severe metatarsus abductus and ankle equinus with arthrosis at the ankle joint." Dr. Adrignolo described the problem as "significant" and recommended that Plaintiff receive a "triple plus ankle fusion" with care provided by an orthopedic specialist at Johns Hopkins Hospital ("JHH"). (Paper No. 1).

Plaintiff further complains that he filed an administrative remedy procedure ("ARP") grievance with Warden Green, who dismissed the ARP in August of 2007 by incorrectly concluding, after review of his medical file, that reconstructive surgery was not indicated at that time. He contends that appeals of that ARP decision were handled in a dilatory manner and that the decision to deny the appeal did not correctly reflect his medical record.

Plaintiff further states that he filed several sick-call encounter forms requesting medical care for his foot/ankle condition after Adrignolo's recommendation and was repeatedly seen by healthcare personnel. He seemingly argues, however, that he was simply passed on to various physicians and podiatrists for consultations and that those examinations operated in a vacuum, in that they ignored Dr. Adrignolo's 2007 recommendation. He maintains that he did see a podiatrist, Dr. Peter J. Cuestra, in April of 2008, and was again recommended for surgery at JHH.

The Complaint also contends that after a civil action was filed in the state court, on October 21, 2008, Plaintiff was seen by another prison physician, Dr. Lawrence Manning, who noted Plaintiff's severe medical problem and suggested that he be evaluated by a foot and ankle orthopedist for possible reconstructive surgery. Plaintiff claims that he was subsequently informed that Dr. David Mathis had denied permission for him to be evaluated by a JHH

specialist. In November of 2008, however, he was seen by yet another physician who referred his case to Dr. Robert Smith, the Medical Director for Wexford, Inc., regarding the recommendation for a "triple arthodesis" and on January 27, 2009, he was evaluated by Dr. Robert Spence at JHH. He claims that no further action has been taken to give him relief for his severe foot pain and deformity,[1] which has severely curtailed his mobility. He seeks injunctive relief and damages.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility

---

[1] According to the Complaint, Plaintiff's foot is growing inward.

to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla"of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

IV.  BACKGROUND

There is no material dispute that Plaintiff has a history of severe burns sustained when he was six years old. He also has an equinovalgus deformity[2] of the left lower limb. According to Defendants, Plaintiff began complaining of increased pain in this left ankle in 2006. He was evaluated several times in 2006 by physician's assistants and doctors for his complaints of pain. An x-ray revealed a possible congenital deformity of the calcaneus and talus of the left ankle, but no significant degenerative joint disease ("DJD"). Plaintiff was treated with muscle rub, Naprosyn, a non-steroidal anti-inflammatory medication ("NSAID"), and Tylenol.

In January of 2007, Dr. Aster Berhane filed a consultation request for Plaintiff to be evaluated by an off-site orthopedic surgeon for possible surgery on his foot deformity and Dr. Mathis filed a consultation request to a prosthetic company, Hanger Prosthetics, noting that Plaintiff required a 2.5 cm. heel and a proportional arch lift and support for his left foot.

Defendants acknowledge that Plaintiff was seen off-site in February of 2007 by Dr. Adrignolo, who had x-rays taken of Plaintiff's left ankle and foot. These x-rays showed that Plaintiff had severe destructive changes at the talonavicular joint[3] with dislocation, osteopenia,[4] no acute fractures, an atrophic calcaneus,[5] arthrosis[6] of the talonavicular joint, fairly severe

---

[2] Defendants assert that an equinovalgus deformity is a foot abnormality in which the heel is elevated and turned outward from the midline of the body. With such a deformity the individual walks badly and with a marked limp.

[3] The talonavicular joint forms part of the ankle.

[4] Osteopenia is the term used for bones that have become somewhat less dense than normal, but not as severe as in osteoporosis. www.med.umich.edu/1libr/guides/osteo.htm

[5] The calcaneus forms the heel bone.

[6] Arthrosis is a common degenerative disorder that can lead to pain and difficulty during everyday use of the affected joint.

lateral narrowing of the talonavicular joint, severe equinus position[7] of the ankle, and a somewhat atrophic[8] calcaneus. Dr. Adrignolo recommended that Plaintiff see an orthopedic surgeon in Baltimore for a "triple plus an ankle fusion" which would be a "very large reconstruction" surgery that would be "way too complicated" to be performed in the local area of Salisbury, Maryland. On February 14, 2007, Plaintiff was evaluated by E.D. Herman, the CPO at Hanger Prosthetics, and an ankle-foot orthodic ("AFO") brace was recommended until Plaintiff could be evaluated for an orthopedic procedure.

On May 14, 2007, Physician's Assistant ("P.A.") Maryam Messforosh ordered a Utilization Review clinic visit for off-site evaluation for Plaintiff's ankle deformity. Three days later, however, Dr. Mathis indicated that reconstructive surgery was not being considered for Plaintiff at that time as Plaintiff had been fitted for an orthotic device to address support and comfort issues associated with the left foot and ankle problem.

Plaintiff was again evaluated by the prosthetic company representative on November 2, 2007. The representative, E.D. Herman, noted that Plaintiff was able to walk without problems. He further observed that Plaintiff's ankle joint was stable and there would be no biomechanical advantage to having Plaintiff wear an AFO. Herman concluded that only if there was a documented change in his ankle foot deformity would an orthotic help Plaintiff. After Herman's evaluation, Dr. Mathis noted that Plaintiff's problem was long-standing and that major surgery would be needed to correct his problem. Mathis was of the opinion that such surgery would not be approved "in the system" by Wexford Health Sources, Inc. ("Wexford"), the utilzation

---

[7]  When in the equinus position, the foot is held in an abnormally plantaflexed (foot bent down at the ankle) position. The foot has a diminished ability to bend up at the ankle, a motion called dorsiflexion.

[8]  Atrophic describes a condition where the relevant part of the body (here, the heel) wastes away or decreases in size due to injury, disease, or lack of use.

review contractor for state prisons,[9] as Plaintiff had come into the state prison system with a chronic, pre-existing condition without acute deterioration and his pain was controllable without surgery.

On February 4, 2008, Plaintiff was seen by P.A. Messforosh for his complaints of increased pain when placing too much pressure on his foot. He was referred to Dr. Berhane for evaluation of his foot deformity and pain.

On March 25, 2008, Dr. Berhane evaluated Plaintiff for his left foot deformity and complaints of severe calluses and skin cracks. He was referred to a podiatrist to evaluate the appropriate footwear and Dr. Berhane also prescribed a 12% ammonium lactate lotion (Lachydrin) to soften the calluses on Plaintiff's foot.

In a summary written by Dr. Mathis on April 28, 2008, Plaintiff was evaluated by a podiatrist, Peter Cuesta, for purposes of possible footwear to help his left foot deformity. Cuesta did not believe that custom molded footwear would hold up in the prison environment and Plaintiff would do better wearing sneakers and walking with his foot the way it is. Cuesta noted that reconstructive surgery would require "big" fusions of the ankle and the subtalar joint and would likely require several surgeries. Cuesta identified two orthopedic surgeons on the Maryland Eastern Shore who might have the proper expertise with that type of surgery.

On May 18, 2008, Dr. Berhane filed a consultation request for Plaintiff to be evaluated by an orthopedic surgeon. Before this evaluation could occur, however, Dr. Mathis conducted a complete examination of Plaintiff's left foot and ankle on July 18, 2008. He concluded that the

---

[9] Wexford is responsible for approving recommended consultation requests and certain medical treatment. It is apparent that any surgical recommendation for Plaintiff to have corrective surgery for his foot/ankle deformity would require approval by Wexford.

calluses and deformity of Plaintiff's left foot did not penetrate into the subcutaneous[10] tissues that would cause Plaintiff's left foot to be particularly painful; Plaintiff should continue on the ammonium lactate lotion prescribed to treat the calluses; and the best footwear for Plaintiff to wear would be the state boots already worn by Plaintiff, supplemented by padding material known as Welbril.  Mathis discussed Plaintiff's case with Wexford Medical Director Robert Smith and a corrections agency official and informed Plaintiff that no reconstructive surgery would be done during his incarceration.

On September 4, 2008, Dr. Adrignolo wrote to Plaintiff and characterized his left ankle deformity as a chronic problem and not an "urgency."  On October 7, 2008, Mathis referred Plaintiff to another podiatrist, Richard Jacobs, for his evaluation of options for treatment of Plaintiff's left foot pain and callus formation.  A consultation request was issued by Mathis for Plaintiff to be evaluated by an orthopedic surgeon.  On October 21, 2008, Plaintiff was seen by Dr. Lawrence Manning, an orthopedist.  Manning in turn recommended that Plaintiff see a podiatrist for consultation on appropriate shoes and treatment of calluses.  Manning also noted that Plaintiff may be evaluated by a foot/ankle orthopedist for possible reconstructive surgery on a routine or elective basis.

On November 6, 2008, podiatrist Richard Jacobs examined Plaintiff and noted that triple arthrodesis[11] surgery was the only plausible treatment plan that would or could appropriately position Plaintiff's immobile foot.

---

[10]  Subcutaneous tissue is the tissue between the skin and muscle.

[11]  According to Defendants, a triple arthrodesis procedure consists of the fusion of the three main joints in the hindfoot (heel)-- the subtalar joint, the talonavicular joint, and the calcaneocuboid joint not including the ankle.

On January 6, 2009, Dr. Mathis evaluated Plaintiff for his complaint of foot discomfort while walking. Mathis noted that Plaintiff indicated his pain was somewhat improved after having his calluses debrided, but that it had not gone away. Mathis also observed that Plaintiff was wearing shoes he had purchased himself and that he had stuffed some paper towels at the bottom of the shoe. Mathis observed Plaintiff walking to his cell without a limp and also noted that he was able to walk up and down steps while placing equal weight on each foot. Mathis further noted that there was no wear on the soles of Plaintiff's sneakers.

On January 12, 2009, Mathis submitted a consultation request form for Plaintiff to be seen by Dr. Robert Spence, the reconstructive/plastic surgeon who treated Plaintiff for his burns when he was a child. Plaintiff was seen by Dr. Spence on January 27, 2009. Spence noted that the area of Plaintiff's foot causing him subjective pain appeared to be a chronic deformity and was not directly related to any burn scarring. His concern, however, was focused on Plaintiff's right chronically dislocated shoulder, which he related to his burn scar contractures. He recommended x-rays of his right shoulder and an orthopedic evaluation of same when Plaintiff returned to the orthopedic surgeon for his ankle problem.

On February 17, 2009, Nurse Practitioner Sharon Owens evaluated Plaintiff for new pain in his right knee and chronic pain in his left ankle. She prescribed Motrin and a follow-up with a physician in three to four weeks. Over the course of the following three months Plaintiff made complaints of pain in his left foot and ankle and right knee. He was referred to a physician for pain management. On August 4, 2009, Dr. Paul Matera conducted a pain management

9

evaluation and renewed Plaintiff's Motrin prescription.  On August 10, 2009, Dr. Mathis recommenced a physiatry consultation, which was approved.[12]

Defendants claim that throughout Plaintiff's treatment, surgery has been considered as an option to address his ankle deformity, but that surgical intervention is not required under the standard of care.  They have objectively concluded that the functional affect of Plaintiff's foot deformity is limited, as he is able to walk without substantial difficulty, and does not manifest signs of substantial discomfort.

In his Oppositions, Plaintiff reiterates the claims raised in his Complaint, again contending that Defendants ignored Dr. Adrignolo's February 2007 recommendation for surgery.  He asserts that he was instead referred to an orthotic/prosthetic officer, podiatrists, an orthopedic surgeon under contract with the Department of Public Safety and Correctional Services, and the JHH surgeon, Dr. Spence, who is familiar with his case history.  He claims that since his January 2009 appointment with Dr. Spence he has not been provided any relief.  Plaintiff acknowledges that in October of 2009, he saw a physiatrist for his shoulder and foot/ankle deformities and claims that the physician recommended that he see an orthopedic surgeon for surgery.[13]

## V. ANALYSIS

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976).  "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment."  *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir.

---

[12] According to Defendants, physiatrists, or rehabilitation physicians, are muscle and bone experts who treat illnesses that affect how a person moves.  Their goal is to decrease pain and enhance performance without surgery.

[13] In his Opposition, Plaintiff names Wexford Health Sources, Inc. as a Defendant for the first time.  He shall not be permitted to so do at this late date.  In any event, no claim would be stated against Wexford under 42 U.S.C. § 1983 for those reasons articulated in n. 14.

2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991).   In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.  *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care).  Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time.  *Brown* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th

Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Inmates do not have a constitutional right to the treatment of their choice, *Dean v. Coughlin*, 804 F.2d 207, 215 (2$^d$ Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. *See Estelle*, 429 U.S. at 105-06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F.Supp.2d 1064, 1070-71 (C.D. Cal. 2006).[14]

Although Plaintiff focuses on Dr. Adrignolo's February 2007 recommendation, the same physician indicated in September of 2008 that the ankle/foot condition was a chronic problem and not an urgency, and he made no definite recommendation as to the timing of such surgery. Further, Plaintiff's surgeon at JHH, Dr. Spence, offered no opinion on the need for surgery in January 2009, but rather deferred the matter to an orthopedic surgeon. Plaintiff was referred for a physiatric consult for his shoulder and foot problems and in October of 2009 saw a physician at the Kernan Orthopedics and Rehabilitation Center within the University of Maryland Hospital Medical System. The consultation with Dr. Thevargarant noted that Plaintiff had a fixed deformity that is causing gait dysfunction and pain and that a conservative measure of an orthotic in Plaintiff's shoe may decrease his disability and pain. Dr. Thevargarant did not recommend foot surgery; rather he noted that if surgery was suggested for the congenital equinus deformity of the foot, the degree of disability Plaintiff would be likely to have "would have to be determined by an orthopedic surgeon."

---

[14] To the extent the Complaint names Correctional Medical Services ("CMS") in the alleged denial of medical care solely upon vicarious liability, the law in this circuit is clear. The doctrine of *respondeat superior* does not apply to 42 U.S.C. § 1983 claims. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982).

The Court finds no Eighth Amendment violation. When the pleadings and record is examined as a whole and pared down to their essentials, it readily appears that Plaintiff's allegations concern his disagreement with medical staff regarding the necessity of his receiving the complex series of joint fusions recommended by a number of surgeons, podiatrists, and physicians on a non-exigent basis.

The identical issues raised in this case were presented by Plaintiff in his lawsuit filed in the Circuit Court for Somerset County, Maryland. A similar finding as to a lack of constitutional violation was reached by Circuit Court Judge Daniel M. Long on August 28, 2009. *See Warren v. Green, et al.*, Case No. 19-C-08-012610. In 2008, Plaintiff filed suit against Defendants Green, Department of Public Safety and Correctional Services, Mathis, and Wexford in that state court alleging that he had been denied access to constitutionally adequate medical care for his foot/ankle deformity and that his right to be free from cruel and unusual punishment had been violated. The state court complaint, presented as an exhibit to the Court, fundamentally parallels the allegations raised in the instant action and was heard by Judge Long at a hearing on August 27, 2009.[15] The transcript of the motions hearing reveals that: the constitutional claim of deliberate indifference was raised, defended, and examined in the state court; the factual allegations raised in the instant Complaint were presented before the state circuit court; and Judge Long found that Plaintiff had been provided constitutionally adequate medical care, noting that:

> "There is an old saying that the squeaking wheel gets the grease. And it seems to me from my review of the file maybe what you said is correct by coming to the court that squeaking wheel started getting some grease in the form of some medical providers. Maybe that was provided to you beforehand, but like an awful lot of attention has been paid to you case and to your medical problems."

---

[15] Indeed, aside from naming Wexford Health Sources, Inc. rather than Dr. Smith, and alleging constitutional violations under the Maryland Declaration of Rights instead of the Eighth Amendment, the state and federal court complaints are substantially identical.

Judge Long continued:

"I do not find that there has been any deliberate indifference by any of the defendants in this case as it relates to Mr. Warren's care. And it may be that because he filed these proceedings and we've come back to court on more than one occasion that's generated medical interest that he's requested from the very beginning. But whatever the reason it would seem to the court from my review of the file that he has received more than adequate medical care on the issues that he's raised this morning and that he has raised all along are essentially moot.

On August 28, 2009, Judge Long granted the summary judgment motions filed by Green, Department of Public Safety and Correctional Services, Correctional Medical Services, Inc., Dr. Mathis, and Wexford Health Sources, Inc.[16]  This state court decision is entitled to both issue and claim preclusive effect. *See* 28 U.S.C. § 1738, *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 84-86 (1984). Federal courts must give the state judgments the same effect as would the courts of the judgment state, unless the litigant did not have a full and fair opportunity to litigate the claim in the prior action. *See Haring v. Prosise*, 462 U.S. 306, 313 (1983);  In Maryland *res judicata* applies when there has been a final judgment on the merits, there exists identity of the parties or privies, and the causes of action in successive suits are the same. *See Snell v. Mayor of Havre de Grace*, 837 F.2d 173, 175 (4th Cir. 1988) (under Maryland's same evidence test, causes of action are same if evidence necessary to support verdict in second suit would have been sufficient to sustain judgment in first suit); *see also Warwick Corp. v. Maryland Dep't of Transp.*, 573 F.Supp. 1011, 1014 (D. Md. 1983) (established rule in the federal courts is that a final judgment retains all of its *res judicata* consequences pending decision on the appeal). Further, under Maryland law collateral estoppel applies if the issue decided in prior adjudication is identical to the issue in the present action,

---

[16]  The state court docket shows that an appeal was filed to the Court of Special Appeals of Maryland.  *See* http://casesearch.courts.state.md.us/inquiry.  This was confirmed by the Clerk for the Court

14

there was a prior final judgment on the merits, the party against whom the decision is being used was party to the prior action, and the party against whom the estoppel is asserted was given a fair opportunity to litigate and appeal the issue. *See Caldor, Inc. v. Bowden*, 625 A.2d 959, 970 (Md. 1993); *O'Reilly v. County Bd. of Appeals*, 900 F.2d 789, 791 (4th Cir. 1990).

The parties in this federal matter were parties or their privies in the state court case, the issues are the same in both the state and federal cases, Judge Long entered judgment against Plaintiff in the state court case, [17] and Plaintiff was give a fair opportunity to litigate and appeal the issue.[18] Therefore, the undersigned alternatively finds that the state court judgment should be given preclusive effect.

## VI. CONCLUSION

For the aforementioned reasons, the Court finds no Eighth Amendment violation and, in the alternative, concludes that Plaintiff is barred from filing his constitutional claims against the Defendants in light of prior state court determination. Defendants' Motions, construed as motions for summary judgment, shall be granted. A separate Order follows.

---

of Special Appeals, who indicates that the appeal remains pending.

[17] In his opposition response, Plaintiff asserts that Judge Long did not dismiss his case with prejudice. The Court disagrees. According to the exhibits, Judge Long's dismissal order reads, in part, as follows:

> "Defendants' motions for summary judgment are granted, and that judgment is hereby entered in favor of Defendants Kathleen Green, the Department of Public Safety and Correctional Services, Correctional Medical Services, Inc., David M. Mathis, M.D., and Wexford Health Sources, Inc. on all claims asserted by the Plaintiff in this action."

This constitutes a final determination on the merits. *See Gillins v. Berkeley Elec. Co-op*, Inc., 148 F.3d 413, 415 (4th Cir. 1998) (granting of summary judgment was a final decision on the merits).

[18] In his Opposition Plaintiff argues that he did not receive a fair opportunity to be heard on the issue in state court because he was proceeding *pro se*, as his attorney withdrew from the case. Defendant Smith counters by asserting that Plaintiff's counsel withdrew from the state court case upon Plaintiff's own request. The Court concludes that there is no showing that Plaintiff was denied the minimum procedural requirements of due process in his state court proceeding.

Date: <u>March 23, 2010</u>              <u>    /s/    </u>
                             RICHARD D. BENNETT
                      UNITED STATES DISTRICT JUDGE